IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 15-cr-00031-JLK-1

UNITED STATES OF AMERICA,

 Plaintiff,

vs.

SHAWN CHEEVER,

 Defendant.
_____

**REPORTER'S TRANSCRIPT**
Sentencing Hearing

_____

 Proceedings before the HONORABLE JOHN L. KANE, JR.,
Judge, United States District Court for the District of
Colorado, commencing at 10 a.m., on the 11th day of July, 2016,
in Courtroom A-802, United States Courthouse, Denver, Colorado.

**APPEARANCES**

VALERIA NEALE SPENCER, U.S. Attorney's Office-Denver 1225 17th
Street Suite 700 Denver, CO 80202, 303-454-0100, appearing for
the Government.

SCOTT THOMAS VARHOLAK, Office of the Federal Public Defender,
633 Seventeenth Street, Suite 1000, Denver, CO 80202,
303-294-7002, appearing for the Defendant.

TAMMY HOFFSCHILDT, FCRR, CRR, RMR, Official Reporter
901 19th Street, Room A251
Denver, Colorado, 80294
(303) 292-1088

Proceedings Reported by Mechanical Stenography
Transcription Produced via Computer
(In open court at 10:10 a.m.)

1          THE COURT:  Thank you.  Good morning.  Please be

2     seated.  This is 15-cr-31, United States of America versus

3     Shawn Cheever, and the matter comes on for sentencing.

4          I have previously granted a Motion To Stay Sentencing

5     in this case until the Tenth Circuit decided a point of law in

6     *United States vs. Bennett*, which applies here, and the Court of

7     Appeals did decide that case, and as a consequence, I set the

8     matter down today for sentencing.

9          The issue decided by the Court of Appeals is whether a

10    particular Colorado statute that the Defendant had previously

11    been convicted of, was such as to trigger a mandatory minimum

12    sentence in this case, as well as in the case of the *United*

13    *States vs. Bennett*.

14         I'm going to give you the citation to that, *Bennett*

15    case, for the record it's 141384 and 141402, 2016, US Appendix,

16    Lexis 9643.  The parties asked to have the matter continued and

17    so it has.  On May 26th, 2016, the Tenth Circuit announced its

18    opinion in *Bennett* holding that the Colorado statute triggered

19    the mandatory minimum ten-year sentence.

20         Now there's a a pending motion which was filed before

21    that decision for a variant sentence, that was based upon the

22    guidelines, and that matter is mooted, and so the motion is

23    denied as it applies to the sentencing guidelines.

24         I also notified counsel that I would not be sentencing

25    this Defendant under the Sentencing Guidelines, and I am not,

3

1    so I have asked that the comments be directed to Section 3553

2    criteria, rather than the guidelines, and also that the parties

3    bear in mind the mandatory-minimum sentence that Congress

4    sought to pass.

5         I have been in the process of writing a detailed

6    opinion on this case, and at this particular point, right now,

7    I want you to understand that I haven't decided the sentence,

8    but I have written and am writing extensively on -- basically

9    on two matters, and one is, the mandatory minimum, which I find

10   to be in conflict in its application with Title -- or Section

11   3553.  It's a conflict that was created by Congress.

12        The other aspect has to do with special conditions on

13   release, and I have spent a considerable amount of time and

14   will issue a written opinion on that, after I have decided --

15   heard from counsel and heard from the Defendant, and then I

16   will publish an opinion that will set forth my reasons, with

17   particularity, for the sentence imposed, and likewise for the

18   fact that I will, as in terms of the special condition for a

19   sex offender, not permit the use of a plethysmograph in any

20   sex-offender treatment.  I have come to a conclusion that it is

21   junk science, and you needn't even argue that point with me.

22   But that -- and I doubt that you intended to, because it's part

23   of the conditions, not part of the sentence.  But I want to

24   give you fair notice that that's the reason why I spent a

25   considerable amount of time, up until now, on this sentence,

4

1    and to state, specifically, that the conditions, the sentence

2    and the reasons, therefore, are going to be spelled out in a

3    written opinion, and therefore I reserve the right to

4    incorporate today's hearing into an order, which will come out

5    later, fully explaining all of my reasons for it.

6              If I were to take the time to explain them all right

7    now, you would be here until tomorrow.  So I think it's better

8    that we just get right to the point.

9              Is there any reason, Ms. Spencer, why sentence cannot

10   be imposed today?

11             *MS. SPENCER:*  No, Your Honor.

12             *THE COURT:*  All right.  Do you agree, Mr. Varholak?

13             *MR. VARHOLAK:*  I do, Your Honor.

14             *THE COURT:*  Thank you.

15             *THE COURT:*  Then I would like to hear from

16   Ms. Spencer, then from Mr. Varholak and then from Ms. Spencer

17   and finally the Defendant, should he care to make a statement,

18   has the right of allocution, which I will hear.

19             Let me just tell you that I think I'm fully familiar

20   with the record in this case.

21             *MS. SPENCER:*  Good morning, Your Honor.  Valeria

22   Spencer on behalf of the United States, at counsel is F.B.I.

23   Special Agent Tina Fourkas.  I asked her to sit here.  She was

24   the investigating agent, and as Your Honor knows, I was not the

25   originating Assistant United States Attorney on this case, that

1    was Ms. Covell, who happily is on a detail.  So I'm stepping

2    in.

3              As Your Honor has pointed out, the *United States*

4    *versus Bennett* case really is on all fours in this matter.

5    What that triggers for us is that mandatory-minimum sentence of

6    ten years.  Congress said if there's a prior conviction, which

7    there is in this case, the sentence is not less than 10 years

8    nor more than 20 years.  Since Congress has spoken, that is now

9    our arena.

10             Your Honor, I do want to spend my time looking at

11   those factors under 3553, explaining why the 10-year sentence

12   actually is the right sentence.  It is the sentence that's

13   sufficient, but not greater than necessary, to comply with the

14   purposes set forth in Section 3553.

15             It is an appropriate sentence, and the Court has asked

16   and directed us to put the guidelines aside, which I'm happy to

17   do, and concentrate, instead, on those factors that are set

18   forth.

19             As Your Honor knows, those standards include the

20   nature and circumstances of the offense, the history and

21   characteristics of the Defendant, the seriousness of the

22   offense, et cetera.  I will go through those.

23             The history and characteristics of the Defendant give

24   us a man who is 44 years old, who has 11 prior felony

25   convictions, and nine prior misdemeanor convictions, beginning

1   back when he was a juvenile.

2          His adult convictions include tampering, menacing,

3   driving under the influence of alcohol, third-degree assault,

4   violation of a restraining order, felony theft, possession of a

5   forged instrument, second-degree forgery, second-degree

6   burglary, forgery with criminal impersonation, possession of

7   methamphetamine, forgery, possession of child pornography,

8   forgery, again forgery, resisting arrest.

9          When you look at the criminal-history category, that's

10  set forth in the **Presentence Report**, we see that there are so

11  many failures at probation and other supervision.  The

12  Defendant did not do well in community corrections nor on

13  parole.  Not in every instance, but in several, he has shown a

14  lack of respect for the Court and the system.

15         The defendant does stand before this Court as a

16  previously convicted sex offender.  One of the things that is

17  talked about, at length, is the Defendant's substance-abuse

18  issues, beginning when he was young.  Apparently, his older

19  siblings thought it was amusing to give him alcohol and

20  marijuana, because they liked the way he behaved when he was

21  under the influence, and that's a really sad fact and a sad way

22  to start off life, but I don't believe those to be *gateway*

23  *drugs*, as the phrase is used, and what we have in front of you

24  is a Defendant who is a methamphetamine addict.  This isn't a

25  marijuana case.  This is somebody who admitted to the agents

1    and to the psychiatrist in the psychosexual evaluation that he

2    was using methamphetamine every day.

3         *THE COURT:*  It's a mixture of methamphetamine and

4    heroin.

5         *MS. SPENCER:*  And he talks about, on page 12 and 13 of

6    that psychosexual evaluation, which is attached to the

7    addendum -- I'm sorry, I'm on the wrong page.  Pages ten and

8    eleven, excuse me, *Reported using methamphetamine since age 20.*

9    Identified his pattern use as *daily*.  He indicated he *started*

10   *using heroin when he was 43, and used it daily until he was*

11   *arrested*.  He identified *cocaine, crack, and LSD as other drugs*

12   *he used, at times, daily before he was arrested*.

13        So we certainly have somebody with a substance-abuse

14   issue.  Now, the reason I'm highlighting that is very

15   particular, Your Honor.  The Defendant indicated that he,

16   quote, *Only looked at child pornography and searched for it*

17   *when he was high*.  He was high every day.  By his own admission

18   he was using every day and using that as an excuse for why he

19   was looking at child pornography.  He is high every day, but he

20   is only looking for child porn when he is high, that doesn't

21   leave a lot of room for not looking for child pornography.

22        So this is not an isolated, *Let's get rid of the*

23   *substance abuse we will get rid of the child-porn problem*.  He

24   is using that as an excuse, and I am very concerned that he is

25   not facing the facts of what he is doing.

1        When we look at the Defendant's prior for possession

2   of child pornography, he had indicated, in talking about

3   empathy and victim impact, on page four of the psychosexual

4   evaluation, he admitted, *It screws them up for life*, but

5   clarifies, *The actual act; not the Internet viewing*.  So again,

6   he is excusing his behavior saying, *You know, it really isn't*

7   *that big of a deal*.

8        He claimed, in discussing that history, on page seven

9   of psychosexual evaluation, that the 2007

10  sexual-exploitation-of-a-child conviction, the prior, which

11  takes us into the enhancement, he says it was based on an old

12  picture of himself and a 15-year-old girlfriend, when he was

13  18, and it was his perception he was tricked into pleading

14  guilty to that charge.

15       He pled guilty in 2007, and he did absolutely nothing

16  to attack that conviction, and he wants this Court to believe

17  that it was just a picture of whatever.

18       I have made some exhibits, Your Honor, if you wish to

19  have those, Exhibits 3, is the Affidavit Of Probable Cause, for

20  the arrest warrant for that state conviction.  The only reason

21  I have marked it is it goes through, on page 21 of that

22  Affidavit, specifically what that behavior was, and it was

23  child pornography on a computer, just like we have here, and

24  includes descriptions of that child pornography, which includes

25  part of what is known, for those who do investigation and

```
1   prosecution of child pornography as the "Vicky series," within
2   that Vicky compilation it is a video that's almost 15-minutes
3   long of a 10-year-old girl; she has been bound; she has been
4   raped; there's oral sex and male ejaculating on her.  There are
5   several other videos, as well, that is not a picture of him
6   having sex with a 15 year old, as Mr. Cheever wants you to
7   believe, this is somebody who is collecting child pornography.
8        And who says, You know, it really doesn't have any
9   impact.  So his lack of empathy certainly needs to be addressed
10  in those conditions of supervised release.
11       The victims, many, not enough, have been identified,
12  as to who they are.  Specifically, the "Vicky series," she has
13  been identified and saved, and her father is in prison for the
14  rest of his life.  When Mr. Cheever tells Your Honor, through
15  the psychosexual evaluation that there's no harm in what he
16  does in looking at child pornography on the computer, I want to
17  tell you what Vicky, that is not her real name, says.  I live
18  every day with the horrible knowledge that many people
19  somewhere are watching the most terrifying moments of my life
20  and taking grotesque pleasure in them.  I am a victim of the
21  worst kind of exploitation, child pornography.  Unlike other
22  forms of exploitation, this one is never ending.  Every day
23  people are trading and sharing videos of me as a little girl
24  being raped in the most sadistic ways.  They don't know me, but
25  they have seen every part of me.  They are being entertained by
```

1   *my shame and my pain.  My world came crashing down the day I*

2   *learned that pictures of me being sexually abused had been*

3   *circulated on the Internet.  Since then, little has changed*

4   *except my understanding that the distribution of these pictures*

5   *grows bigger and bigger by the day, and there's nothing I can*

6   *do about it.  The enormity of this has added to my grief and*

7   *pain and giving me a paranoia.  I wonder if the people I know*

8   *have seen these images.  I wonder if the men I pass in the*

9   *grocery store have seen them.  I'm totally out of control.*

10      *As I go on with my life, the effects of these crimes*

11  *still hurt me, and I hope the Court and everyone involved will*

12  *understand this and how series it is.*

13      *The men that download my pictures are all around me,*

14  *for all I know, and it will keep going on forever.  I have no*

15  *control over it at all.  This is frightening beyond belief.*

16      I know that Your Honor is aware that this is not a

17  victimless crime.  I read those statements on behalf of the

18  victims that Mr. Cheever has ignored, that he is exploiting

19  through downloading and looking at and masturbating to those

20  videos, and images of those poor, helpless children.  For him

21  to say there's no impact on them being on the Internet is why

22  this is a crime.  He does not get it.

23      He didn't get it in 2007 when he pled guilty to his

24  conduct from 2004, and apparently based on the psychosexual

25  evaluation that was just done, at the end of last year, he

1  still doesn't get it.  You know, there's -- *the Internet*

2  *viewing that's really nothing.*

3  There's really no justifiable reason to sentence the

4  Defendant to anything less than the mandatory minimum in this

5  case.  It is the legal sentence.

6  And again, I just have to say that by engaging in

7  collecting of child pornography on at least two points in time,

8  2004 and 2014, he has encouraged the abuse of countless minors.

9  The fact that this is the Defendant's second

10  conviction for the same offense within nine years, the

11  likelihood appears to be stronger, but there's a likelihood of

12  recidivism.

13  The psychosexual evaluation is incorrect when he talks

14  about the factors of risk for recidivism, and he includes he

15  has never done this before.  Unfortunately, the psychiatrist

16  took Mr. Cheever's explanation of that prior as reality, and

17  that was not factually based at all.  He could have obtained

18  the affidavit for that arrest warrant just as we did, to find

19  out that, in fact, the Defendant was downloading and saving

20  child pornography on his computer, just as he is doing now.

21  The Defendant gave statements to the agents when they

22  went to do the search warrant on the house, and he acknowledged

23  that when he was looking for child pornography, he was asking

24  for girls age 10 years old and up.  He again told them, *I will*

25  *look when I get high*, but he admitted that he is high almost

1   every day.

2          Images were shown to the Defendant during that

3   interview of prepubescent nude girls, and when asked if he got

4   sexual gratification from looking at the pictures, he said,

5   *Sure, of course*.

6          So we can't pretend this is anything other than what

7   it truly is, a very serious offense.

8          One of the things that the Court has to take into

9   account in looking at the factors, besides seriousness of the

10  offense, is promoting respect for the law, which we have

11  determined with his criminal history he lacks, and just

12  punishment.  I do think that ten years is the just punishment

13  in this case.

14         Deterrence is one of the factors, adequate deterrence,

15  not just for the Defendant, ten years, I do not pretend is not

16  a big sentence, it is a very serious sentence to be handed

17  down, but it's also deterrence of others.

18         One of the things I talked about in other case law is

19  said sentencing influences behavior, and at least Congress

20  thought so when they in 3553(a) made deterrence a sentencing

21  statutory factor that they were looking at and thinking, *We*

22  *want to put a message out there if you commit this crime, you*

23  *need to know what the seriousness of that conduct is going to*

24  *be*.

25         Protecting the public is a factor that the Court has

13

1    to take into account.  I've already talked enough about the

2    fact that this is not a victimless crime.  We all know that.

3    It is a forever crime.

4            Now, the Defendant does need treatment.  The Defendant

5    is going to be out.  He is only 44.  Court sentences him to 10

6    years today, he will be out.  It is clear, and the

7    recommendations include some serious drug-offender,

8    substance-abuse programs, and he needs all of those.  He needs

9    to address it seriously.

10            Now, we all know that you can impose conditions up and

11   down, one through one hundred, and unless he is ready, it won't

12   matter.  So he is going to have time in prison to decide if he

13   is ready to really address this problem.  He has been within

14   the substance-abuse community, it appears, for for 34 years.

15   He started when he was 10, with his brothers, that's a long

16   time to kick a habit.  He is going to have time in prison to

17   try to do that.  He claims he has been clean before.  So drug

18   treatment, certainly.

19            Sex-offender specific treatment, certainly.  The

20   Defendant doesn't get it, so he needs to have some by -- by

21   *doesn't get it*, I mean understand.  He is not cognizant of the

22   seriousness of his behavior.

23            I'm not clear that he did do sex-offender treatment

24   from his prior conviction.  Part of that was connected to his

25   forgery conviction, he did COMCOR, he did some prison time, I'm

1    not clear that he really did do any sex-offender treatment, and

2    it was too old for the records to be pulled.

3            Unwarranted sentencing is an important factor for the

4    Court to consider, that there's not disparities.  You look at

5    somebody like this with a similar record, with eleven prior

6    felony convictions, I think ten years is right in the

7    heartland.  If you say, *You know, he doesn't have as many*

8    *images or the type of quality of images that we typically see*

9    *in the child sex-offender cases that we have in this*

10   *courthouse*, and that is true, he doesn't have the extensive

11   collection library, and the categorization of images that we

12   see, but this is his second offense.  This is somebody who

13   continues to pull down child pornography.  He knows how to find

14   it.  He knows how to get it.

15           I believe he was posting a picture or pictures of his

16   daughter and her friends that he pulled from Facebook.  Not

17   nude pictures, but posting those up, saying *I want child*

18   *pornography*, intimating he would send other pictures that were

19   associated with those real children, and that's how he got

20   pictures.  Received pictures based on that.

21           So I don't believe there's a sentencing disparity

22   while we lock him in with his criminal history and behavior in

23   this case, when we talk about ten years.  It is the mandatory

24   minimum.  I'm not asking the Court to go up beyond that.

25           I do believe that probation is accurate in assessing

 1    his needs, when he is done with his prison sentence, in asking

 2    for 15 years of supervised release.  The Defendant clearly

 3    needs some serious supervision in the community.  The

 4    conditions are listed, let's see, in the **Presentence**

 5    **Investigation Report**, attached as Exhibit A, beginning on R-1.

 6    The mandatory conditions, of course, I don't have an issue

 7    with, nor the standard and special conditions, and those

 8    include all of different drug-offender conditions.  It is the

 9    additional special conditions, on R-3, that I think the Court

10    was alluding to, in terms of striking out plethysmograph,

11    making sure we don't have that in there.  So that's number

12    three.  Participate and successfully complete an approved

13    program of sex-offender evaluation and treatment as directed.

14    It says it may include, and I think that's appropriate when we

15    are talking about a ten-year sentence, what may be included and

16    what the experts are best versed in ten years from now, and I

17    know that *Bennett* had spoken of that, as well, that it may be

18    best to, sort of, lay some of those down the road, because

19    clearly he is going to need treatment.  We want to strike the

20    plethysmograph, the Government has no problem with that, but I

21    would ask that number three, at least, stand as participate in

22    and successfully complete an approved program of sex-offender

23    evaluation and treatment as directed by the probation officer.

24         If the Court wants to end that with a period and not

25    include any of that, that's fine, and we will see where we are

 1   when the Defendant gets out, and what is considered appropriate

 2   at that time.  Happily, it's a moving field, as the experts

 3   delve into this and really try to keep these guys in the

 4   community while keeping the community safe, balancing those

 5   two, making sure that happens.  I think the other conditions

 6   are appropriate.

 7        I'm happy to address any of those specifically as the

 8   Court wishes, but I have no further comments.

 9        THE COURT:  Thank you, very much.

10        MS. SPENCER:  Thank you.

11        MR. VARHOLAK:  Thank you, Your Honor.  I will begin,

12   just because I don't want to forget it, with that very last

13   point on the supervised release.  I don't have a problem with

14   Ms. Spencer's suggestion of, *Shall participate and successfully*

15   *complete a program in sex-offender treatment*, and putting a

16   period in there.  As Ms. Spencer knows, as she was on the other

17   side of me in *Bon Behren* matter, dealing with the polygraphs.

18   In that case, we addressed concerns that we had on the Defense

19   side, with conditions of supervised release, after the

20   individual had served their sentence, and it may be ten years

21   from now the whole treatment program is different than where it

22   stands now.  So I don't have any problem with Ms. Spencer's

23   suggestion.

24        THE COURT:  Well, I'm quite sure that I'm not going to

25   be here ten years from now, and I know that there are going to

1    be changes, but I don't know what the progression of the

2    changes is, and that frightens me.

3        MR. VARHOLAK:  I certainly can understand that, and

4    you know, as the Court is aware, I have litigated the *Von*

5    *Behren* issue and I'm well familiar with the issues on

6    supervised release.  In fact, I just gave a lecture at a

7    national conference on supervised release in sex-offender

8    cases.  I'm aware of those issues out there.

9        I'm just hesitant, because, as I will talk to in a

10   moment, Mr. Cheever really wants sex-offender treatment and

11   wants to learn why he does this, and so I guess I will go back

12   to the beginning.  On my objection, I obviously rest on the

13   objection.  I think that, you know, it is, as the Court

14   declared, on all fours, but I would like to preserve the issue,

15   so I maintain that *Bennett* was wrongly decided.  I maintain

16   that the Court erred -- the Tenth Circuit erred.

17       THE COURT:  You are certainly free to do that, I think

18   it's very clear, and I am bound by *Bennett*, but you are

19   entitled --

20       MR. VARHOLAK:  I understand.  I'm making the

21   objection, and we intend to appeal that.

22       THE COURT:  And I understand that and the objection is

23   overruled.

24       MR. VARHOLAK:  Thank you, Your Honor.

25       THE COURT:  As long as we're on that, before you go

1    further, since I have to go through this guideline calculus,

2    whether I intend to or not, use it or not, that was the only

3    objection, as I understand?

4            *MR. VARHOLAK:*  Correct.

5            *THE COURT:*  So accordingly, the guideline calculations

6    that were done by the probation office, and I looked at them,

7    as well, and I think that they are correct.

8            Ms. Spencer, I forgot to ask you, and I am sorry I

9    didn't, but do you agree with the guideline calculations that

10   have been given in this case?

11           *MS. SPENCER:*  I do, Your Honor.

12           *THE COURT:*  All right.  Okay.  We've settled that.

13           *MR. VARHOLAK:*  As I set forth in my **Sentencing**

14   **Statement,** I really believe that the correct sentence in this

15   case was five years, under the 3553(a) factors, and I will turn

16   to those next.

17           Obviously, this offense is serious.  I can tell the

18   Court, and I know Mr. Cheever is going to address the Court,

19   and I believe will talk some about this, his understanding of

20   the effect that his viewing of the image apposed to somebody

21   who produces the images has on children is something that he is

22   learning.  As Ms. Spencer acknowledged, he doesn't have the

23   lengthy sex-offender treatment that he will eventually get

24   beginning and serving his B.O.P. sentence and then afterwards,

25   and part of what they teach, is exactly what Ms. Spencer was

1    just saying, that even the viewing of the images has an impact

2    on these people.  Yeah, he doesn't have that full insight yet,

3    and I am going to turn to, for a minute, about the treatment he

4    has received, even since I filed my **Sentencing Statement**,

5    almost whatever it was, a year ago now.  And his understanding

6    that has come in, even since his evaluation, from Dr. Fisher.

7    One of the nice things about this case is because we delayed so

8    long, while waiting for the Tenth Circuit to issue *Bennett*,

9    Mr. Cheever has begun a form of treatment.  It's not

10   sex-offender specific treatment, but a form of treatment while

11   in custody, and he has really learned a lot, and I am going to

12   turn to that, in a moment, as to what he has learned.  But we

13   are in the unique position of -- the Court is in a unique

14   position of being able to sentence somebody, really, a year and

15   a half now after the conduct that occurred, to see a little bit

16   of, *has this had any impact on him*, opposed to three months

17   down the road or four months down the road, where the person

18   hasn't had the opportunity to maybe absorb some of these

19   things.

20         I will begin with the offense, because it is serious,

21   but it's unique.  Ms. Spencer acknowledged that.  This is --

22   there were total of 172 images, but almost all of those were

23   found in the trash; meaning, Mr. Cheever attempted to delete

24   them.  I think that shows something.  I think that shows that

25   he was embarrassed by what he does when high.  I will get to

1    that in a moment too, about what that means exactly --

2         But what we typically see in a Federal

3    child-pornography prosecution, is an individual who has

4    distributed, maybe even produced, we are seeing more and more

5    of those, but at a minimum has typically distributed the images

6    to others, and typically has an extensive library.  They have

7    categories.  I had a case with Ms. Spencer years upon years ago

8    in which the individual had categorized, and I'm not going to

9    get this exactly right because it was so long ago, but

10   categorized the different images into different categories,

11   such as babies, young girls, young boys.  Again, I'm not going

12   to get this exactly right, but it was that type of

13   categorization, that type of sorting of a library, that you

14   just don't have here.

15        We don't have somebody who has done that.  We have

16   somebody who is clearly looking at it.  How this case was

17   brought to the Government's attention was they received, I

18   think it was a Google notice or some Internet, maybe it was a

19   Yahoo notice saying, *We have an email that somebody had*

20   *received child pornography*, that's 42 images, I believe that's

21   right, that he received, and then deleting those.

22        We have no distribution.  We don't have somebody who

23   is looking at it, and then sending it out to others and

24   redistributing these images out there.  Again, doesn't make it

25   right, in no way, underestimating the seriousness of this, but

1    when we look at him compared to the typical child-pornography

2    Defendant who appears in this courthouse, it is severely

3    limited, and he explained when he does this.  He says, *I do it*

4    *when I'm high*.  Right, he was high all the time.  The

5    importance is not how often he does it, that's not why that's

6    important.  It's important to go to what's triggering it.  And

7    as the Court knows, when somebody is high on drugs, their

8    inhibitions are lowered, and it's clear by his deletions of

9    these that he is embarrassed by his conduct, but when his

10   inhibitions are lowered, he doesn't control himself, and that

11   becomes important when we look down the road to deterrence and

12   avoiding this type of stuff.

13        And Ms. Spencer is absolutely right, he needs drug

14   treatment.  He is going to ask, and we're going to ask the

15   Court for an RDAP recommendation while he is in prison.  I

16   don't know that that's going to benefit him any as far as time

17   off or anything else, but he needs it.  He needs that level of

18   treatment.  We're going to ask the Court to recommend

19   sex-offender treatment while he is in prison, because he needs

20   it.  He needs to understand what this conduct does, even the

21   viewing of it does to the children, now many of whom are

22   adults, who are involved.

23        And Ms. Spencer is absolutely right, none of this

24   treatment is going to mean anything unless he wants it.  And I

25   think he -- again, he is going to address the Court, but he

1    addressed the Court back in -- at the Change of Plea hearing;

2    now, whatever it was, almost a year ago, and he said, *I want*

3    *treatment*.  I noted these words down at the time that they were

4    said, and I didn't encourage him to do this, I didn't coach him

5    to do this, this was all his, and he said, *Your Honor I want*

6    *treatment so I can understand why I do this*.  That's somebody

7    who is not minimizing.  It's somebody who is attempting to

8    understand and needs the treatment to do that.

9            Now, it's understandable, even with his prior

10   conviction, why he doesn't fully appreciate that.  That prior

11   conviction was a misdemeanor, that misdemeanor, that takes this

12   from a zero to ten to ten to twenty, it was a misdemeanor

13   Colorado conviction, that largely trailed what the State viewed

14   as the more serious charges of forgery, and so it's

15   understandable when that gets sort of tacked on as a plea at

16   the end, really it's forgery that carries the significant

17   penalty that he doesn't fully understand just how serious this

18   conduct is, because frankly, the State, and I believe the

19   statute is now changed in the State, but the State, at the

20   time, didn't take it as seriously as it should be, as seriously

21   as the Federal Government does.

22           Now, since that guilty plea that he entered, he has,

23   in October 2015, began seeing a psychologist.  Initially it was

24   for depression.  He was depressed, based upon his

25   circumstances, based upon some other issues that came out in

 1   therapy, and he began seeing a prison psychologist.  He

 2   eventually admitted two things to the psychologist, and this is

 3   after he spoke with Dr. Fisher, it's after the **Presentence**

 4   **Report** was prepared, it's after my **Sentencing Statement** was

 5   drafted to the Court.  For the first time he admitted two

 6   things to anybody, and he admitted them to his psychologist,

 7   the first was that he had been sexually abused by friends'

 8   parents on multiple occasions from the ages of 9 to 13.  He

 9   never admitted that to me.  I didn't know about this; and two,

10   that he identifies as a woman, and these issues he has begun

11   talking to his -- the therapist in prison about, and working on

12   ways to maybe understand how that maybe plays into why he has

13   done what he does.  Not as an excuse for it, but again, going

14   back to what he told the Court, back when he entered his guilty

15   plea, which is, *I want to understand why I do this*, and taking

16   it out a step further, *how I stop doing it and I control it*,

17   and that's what sex-offender treatment teaches them.  It

18   teaches them how to control the urges that causes somebody to

19   do this.  Somebody who is clearly embarrassed by it, and that's

20   the treatment he wants.

21        Now, Ms. Spencer mentioned a little bit about the

22   sex-offender evaluation.  Yes, Dr. Fisher did rely upon

23   Mr. Cheever's explanation, and again I think Mr. Cheever

24   probably doesn't fully know why he was tagged with that child

25   pornography, because it was a misdemeanor tagged on.  I can

 1   tell the Court that we had attempted to seek all of the

 2   records, the records that Ms. Spencer introduced today, and we

 3   were told they didn't exist.  I don't know how the Government

 4   got them, because we were told there are no records to identify

 5   what actually happened, what the actual conduct was in that

 6   case.

 7        Again, I don't know if -- because it involved child's

 8   victims, it was sealed and wasn't available to anybody but the

 9   Government, I don't know, but we had sought it because we

10   wanted it, not just for purposes of 3553(a), but this prior to

11   *Bennett* being decided, we wanted to know was there some other

12   document out there that could distinguish -- could make this,

13   whether the recidivist portion of statute applied or not, and

14   we were told it didn't exist.  We sought it from both the court

15   and the police department too.  We were told that all they had

16   was the judgment of conviction.

17        So I don't think that affects Dr. Fisher's report,

18   especially since Dr. Fisher candidly acknowledges in her report

19   that there's some risk of recidivism with respect to Internet

20   crime.  She says she sees a very low risk of any hands-on

21   offense, and that's supported by the fact that there's no

22   history of that, but she acknowledges some risk of Internet,

23   and then she sets forth a detailed category of things that she

24   believes should be done in order to help him avoid that

25   recidivism.

1          Turning to his history and characteristics.  He didn't

2   know his real father.  He was exposed to criminal conduct at an

3   early age, as Ms. Spencer points out.  He was given drugs at 10

4   years old, I think she said it was older brothers, it was

5   actually some uncles, thought it was funny when he was high.

6   That's -- I have a 10-year-old son, that's unfathomable to me.

7          At 23 years old he sustained a serious head injury,

8   which may explain the low cognitive testing that's in

9   Dr. Fisher's report.  He struggled with addiction, and that's

10  the root of most of his criminal cases.  If the Court looks

11  at -- and his criminal record is terrible.  I acknowledge that.

12  But it's almost all either drug cases or cases relating to

13  doing stuff to try to get drugs.

14         Yet, Dr. Fisher doesn't believe he has antisocial

15  personalities; rather, she says that most of these offenses

16  relate to his drug addiction.  Despite his traumatic upbringing

17  and struggles with the law, he has made some positive

18  contributions.  When not incarcerated, he maintained steady

19  employment.  He enjoys working and takes pride in his work.

20         Finally, of course, ultimately, what this Court must

21  do is impose a sentence that's sufficient, but no greater than

22  necessary.  One to reflect seriousness of the offense and

23  promote respect for the law.  Again, obviously this is a

24  serious offense.  Nobody is disputing that.  But we have

25  limited images, most are in the trash, and there's no

 1   distribution of any of the images, and that last point I think

 2   is especially important when we are talking about the continued

 3   re-victimization of the victim involved in this.  They are

 4   being re-victimized by him looking at it, but he is then not

 5   sending it out to other people, and I think that's important

 6   when we look at trying to limit how these things are brought

 7   through the Internet and in society, so.

 8           Treatment, again, Dr. Fisher has given her

 9   recommendations for what the treatment should be.  The Court

10   can incorporate many of these as conditions of supervised

11   release to ensure that he follows those things.  He wants

12   treatment.

13           He is going to address the Court.  He wants

14   drug-and-alcohol treatment and he wants sex-offender treatment.

15   He told this Court, whatever, a year ago, at the Change Of Plea

16   hearing.  He has begun seeking that out, now, again, not

17   sex-offender specific.  He can't get that where he is, but he

18   is at least talking to a psychologist to try to work through

19   some of the things that he has never dealt with before in his

20   life, that he has never acknowledged to anybody else in his

21   life.

22           And then finally, deterring future criminal conduct

23   and protecting the public.  Again, Dr. Fisher finds that

24   *hands-on* there's a very, very low risk.  She does acknowledge

25   that there's some danger of reoffending of this type of similar

1  conduct, but sets forth what needs to be done in order to

2  protect against that.  Notably, he does not belong online

3  relationships, do not engage in online activities involving

4  interpersonal relationships.  Sex-offender treatment is what is

5  needed and can get to the root cause of this.

6       Again, we don't have somebody who is proud of what he

7  has done.  We don't have somebody who is building a database

8  and trying to categorize this stuff.  We have somebody who,

9  after he looks at it, is clearly embarrassed, ashamed of what

10 he has done, and he deletes all of them, and that shows

11 somebody who can change, who wants to change, but who needs the

12 tools to do that.

13      On the final issue of supervised release, Your Honor,

14 obviously that's left to your discretion.  I'm not sure 15

15 years are needed right off at the beginning.  You know, maybe

16 something less.  The Court could always extend if he not doing

17 well down the road, although as Your Honor acknowledged, that

18 you may not be the one doing that.  At the end of the day, I'm

19 probably not going to be in that same position either.  To some

20 extent we are guessing a little bit on 10 years down the road,

21 what's going to happen.

22      THE COURT:  Quite frankly, that's one of the reasons

23 why I'm spending a lot of time writing this opinion.

24      MR. VARHOLAK:  I understand.  And he is going to need

25 treatment and he acknowledges that and he wants that, and I

 1   think that treatment creates less of a need for the

 2   incarceration component.  As I said, I really think five years

 3   is the appropriate sentence in this case, but I -- I understand

 4   where the Court is, and the Court obviously has the Tenth

 5   Circuit in mind.

 6          THE COURT:  Ms. Spencer, anything else?

 7          MS. SPENCER:  I don't believe I have anything else.

 8   Thank you.  Your Honor.

 9          THE COURT:  Okay.  Thank you.  Mr. Cheever, if you are

10   going to make a statement, please go to the lectern.

11          THE DEFENDANT:  I have learned since I have been

12   incarcerated, that I know the amount of shame and embarrassment

13   as I have, right now, it's nothing compared to the shame and

14   embarrassment of my victims that they are going to continue

15   with the rest of their lives.  Something I learned when I was

16   in.

17          When I first spoke with Ms. Fisher, I answered every

18   question I best possibly could at the time.  I tried not to say

19   anything wrong or try to deceive her in any way.  I know

20   that -- excuse me -- I know that I ruined any chance I will

21   ever have at having a relationship with my daughter, and that's

22   probably the worst thing I have ever did in my life.

23          I, obviously, don't know what else to say, except that

24   I ruined my life, I ruined my wife's life and humiliated a lot

25   of people, and for that, you know, I can't begin to express how

1   sorry I am for that.

2          *THE COURT:*  Well --

3          *THE DEFENDANT:*  But at the same time, I would also

4   like to thank Ms. Tina for ending my spiral.  I'm not happy to

5   go to prison, I'm going to do everything I can to get the most

6   out of the it that I can.

7          *THE COURT:*  Okay.

8          *THE DEFENDANT:*  Thank you.

9          *THE COURT:*  All right.  You can stand there if you

10  want or you can sit down.  It's up to you.  This case, your

11  case, is very troubling to me, and there are a number of

12  reasons why, that many of which are beyond your control, but

13  one of the things that bothers me is when I see eleven prior

14  felony convictions, and I wonder when the State judicial system

15  and the State correctional system is going to take a

16  responsible role about doing something with the hundreds of

17  thousands of people that come before them.  Because what

18  happens now, with time and time and time again of probation,

19  suspended sentences, et cetera, is that it trivializes the law,

20  particularly for a 15 year old or 16 year old or 17 year old,

21  and I see this constantly with not just your case, but others.

22          Now we're confronted with something where if there had

23  been some early intervention in your life, at age 9 or so,

24  adequately, to get into some of these problems that were the

25  things that were being inflicted upon you, I don't think you

 1   would be here today, but that's one of the things that we have

 2   to deal with.  It's just never been done.  Every time that you

 3   were placed on probation or community corrections or deferred

 4   judgment, for whatever reason, those things failed, and I

 5   just -- I don't have any control over what happens in the State

 6   system but -- and it is, to a great extent, I'm sure, a matter

 7   of resources.  But our prisons are filled because of the

 8   failure to give adequate attention when the problem arises.

 9           The other thing I want to mention is that I don't see

10   you as the typical or prototypical possessor of child

11   pornography.  The other cases, and I am not talking about the

12   producers of them, because for them, I think 40 years is too

13   little of a sentence, but the hapless collectors generally are

14   those who collect and they actively exchange pornography, it

15   takes on a sense of being a kind of perverted form of stamp

16   collecting, with exchanges, and *Do you have this and that*, and

17   you haven't been involved in that, but the thing that you do

18   share with them, which is the gravamen, the basis of the

19   penalty involved in this, is utterly lacking any empathy for

20   the child victims, and today is the first time I have heard

21   this from you, that you have -- you are beginning to understand

22   the enormity of this offense in terms of the victims of it, and

23   it's a far more serious offense than most people want to pay

24   attention to, because of those -- because of those children.

25   The Supreme Court has recognized that, and so have all of the

1    experts in the field, and I am going to write this opinion to

2    spell out, for you, and for whoever replaces your attorney in

3    the future, and whoever replaces me on this bench in the

4    future, I want it written out so there's some source of

5    understanding what I was thinking of.

6         I agree with Ms. Spencer's comments, with one very

7    small exception, and that is that I think that the use of

8    mandatory-minimum sentences doesn't have any basis in reason.

9    I have searched the congressional history and there isn't any

10   for a mandatory-minimum sentence, and I haven't seen this

11   happen yet.  I'm hopeful that this opinion will, perhaps,

12   encourage both the prosecution and the defense, in the future,

13   to pay some attention to forming a rational basis for

14   recommending a sentence.

15        In this case, in your case, there's more than one

16   therapy program that's needed, and the prison system offers

17   them, and so I think what an appropriate sentence would be is

18   one that takes into -- it's a very influencing consideration,

19   the amount of time needed for these programs, but simply to

20   say, on the basis of intuition or by guess and by golly, *Well,*

21   *I think this sentence is good*, I don't think that's the case.

22   Certainly Congress doesn't, with the mandatory minimum.

23        These programs could be done with -- in less time than

24   ten years.  Now, why is that important?  To me, it's important

25   for this reason, the ability of someone to behave and conduct

 1   themselves according to law, is affected most seriously by the

 2   amount of stress that they are submitted -- subjected to.  And

 3   the stress of ordinary living on the outside of a prison,

 4   there's certainly stress living in prison, but the kind of

 5   stress that is outside is the kind that causes people to fail

 6   to adhere to reform.  They fall back.  This is true with all

 7   kinds of addictive behavior, and that suggests, to me, and I

 8   know that there are many behavioral scientists who have written

 9   on this, that I'm agreeing with, they are the experts, is that

10   the best way to avoid recidivistic behavior is to have people

11   receive the assistance they need in the crucible, in the stress

12   in which they have to live, but we don't do that, for the most

13   part.  We do have supervised-release conditions, which I'm

14   going to spell out, for that reason, but for the most part we

15   sentence people to prison, we cut them loose and tell them that

16   they are citizens again and yet they can't vote, they can't sit

17   on a jury, they can't run for office, they are disqualified

18   from Federal housing, from most kinds of entitlement programs,

19   from jobs, and there's very little for them to do except to

20   re-offend, and that's one of the failings of the system.

21        On the other hand, we are all bound by the law, and

22   Congress, while I disagree, emphatically, with making a

23   *one-size-fits-all* kind of mandatory minimum sentence, that's

24   what the Congress has done, and I am bound by it, and I agree

25   with counsel, in this case, that the ten-year mandatory minimum

1   is the sentence that should be imposed.

2           I thought long and hard about how long a supervised

3   release should be, and I think that the people in the probation

4   office have a better sense of that than I do.  I do know that

5   there are numerous kinds of programs to assist you in staying

6   out of prison, once you finish your time, and I hope that those

7   kinds of programs improve and increase in the future, but the

8   final thing about this, where the rubber meets the road, is

9   it's really up to you and nobody else.

10          I'm appalled at the fact that there isn't anybody else

11  in the courtroom for you.  There isn't anybody else.  It's just

12  you, and that means, when you go to prison, you are going to

13  have certain choices.  You can -- you can immerse yourself in

14  the programs that are available, and there are also voluntary

15  programs that are available.  You can get the assistance that

16  you need.  But if you don't have the right attitude for it, it

17  will be a waste of time.  If you sincerely want to change and

18  stay out of prison and stay out of the hell that's in your

19  head, you can.  You can do it.  But I can't -- I can't -- I can

20  order that you have so much time, and order -- recommend that

21  you receive the kinds of treatment that I think the experts

22  have said that you need, and they can wish you the very best,

23  but it's up to you.  Deep down inside there isn't anything in

24  the world that's going to help, unless you want it to.

25          I'm not, by any means, trying to suggest that you

1   can't do it, but I do want you to know that the responsibility

2   is yours.

3        The mandatory minimum ten years is the sentence

4   prescribed by law.  I think it could be done in less time in

5   prison, but that's beside the point.  You are subject to this

6   mandatory minimum of ten years.  I could impose a maximum of 20

7   years, or somewhere in-between, but I agree with your attorney,

8   and with the prosecutor in this case, that the minimum should

9   be imposed.

10        I have described, as best I can, that this mandatory

11   minimum is greater than the time needed to provide the

12   necessary treatment programs and as such, it really is

13   counterproductive to the purpose of sentencing, to prevent

14   further criminality on your part, but that's what Congress has

15   decided and that's what we're stuck with.

16        So it's -- I will spell out all of my reasons in an

17   opinion, but it is the judgment and sentence of this Court,

18   that the Defendant, Shawn Cheever, is hereby committed to the

19   custody of the US Bureau of Prisons for a term of ten years.

20   Upon release from imprisonment, the Defendant shall be placed

21   on supervised release for a term of 15 years.  The Defendant

22   shall immediately pay a Special Assessment of $100.  I find the

23   Defendant does not have the ability, prospects or resources to

24   pay a fine, and so I waive the fine in this case.

25        It's further declared, pursuant to Rule 32.2 of the

1   Federal Rules of Criminal Procedures and the **Plea Agreement**

2   signed by this Defendant and his counsel, that Mr. Cheever

3   forfeit his interest in the following properties to the United

4   States; one a Del laptop computer, bearing serial number

5   45VM8F1; two, a WD hard drive, bearing serial number WCLAK

6   1373091; and three, a Samsung cell phone.

7        Now, I cannot order programs for you.  Those are up to

8   the Bureau of Prisons, and so is the amount of good time

9   awarded to you for the incarceration prior to today's date, but

10  I can make recommendations, and it is my very strong

11  recommendation, based upon the psychological evaluations and

12  the studies that have been submitted and the analysis of the

13  probation department, as well as the comments of the Assistant

14  United States Attorney and your attorney, Mr. Varholak, as well

15  as what you have told me, I think that first and foremost we

16  have to understand what one of the psychologists said; and that

17  is, that this possession and use of child pornography is

18  directly related to the underlying problem of your addictive

19  personality, with regard to drugs and alcohol, and therefore,

20  it's my strongest recommendation that you receive a number of

21  programs, and likewise, while on supervised release, that you

22  receive additional programs, and that these include

23  substance-abuse treatment, with traditional treatment

24  modalities, including, but not limited to, Feeling-State

25  Addiction Protocol, Desensitization Triggers, and Urge

1   Reprocessing Protocol, as well as Reprocessing Therapy.

2   Further, that you participate in the following programs,

3   Sex-Offender Management Program, Residential Drug and Alcohol

4   Treatment, the RDAP Program, Anger Management and such

5   mental-health programs as evaluators deem appropriate.

6       I think and recommend you should also be afforded the

7   opportunity to participate in such voluntary programs as

8   Alcoholics Anonymous, Narconon, and any similar organization

9   providing abstinence and recovery assistance to sex offenders.

10      While on supervised release, you will be subject to

11  the following conditions, and they may not be changed or

12  modified without the prior authorization of the Court; one, you

13  shall report within 72 hours of your release from imprisonment

14  to the probation office in the Federal District to which you

15  are assigned; two, you shall not leave the judicial district to

16  which you are assigned without the prior written permission of

17  the Court or a probation officers; three, you shall report to

18  the probation officer promptly in a manner and frequency as

19  directed by the probation officer; four, you shall, at all

20  times, answer truthfully all inquiries by the probation officer

21  concerning the conditions of supervised release and your

22  activities while on supervised release, and you shall follow,

23  explicitly, the instructions of the probation officer; five,

24  you shall not incur debt or credit without the prior permission

25  of the probation officer.  You shall provide any and all

1    financial information upon request of the probation officer;

2    six, you shall maintain employment and work regularly in a

3    lawful occupation, unless excused for acceptable reasons such

4    as illness or lack of employment availability as determined by

5    the probation officer; seven, you shall notify the probation

6    officer, in person or in writing duly delivered, at least ten

7    days prior to any change in residence or employment; eight, you

8    shall refrain from imbibing, injecting, inhaling or otherwise

9    using any intoxicating substances, and shall not possess,

10   purchase, use, distribute or administer to yourself or anyone

11   else, any controlled substance or use or possess any

12   paraphernalia related to any controlled substance, except as

13   provided by a licensed physician and approved in advance by the

14   probation officer.  Nor shall you use, possess or sell any

15   marijuana or it's derivatives, including THC in any form,

16   including edible, and shall not enter any marijuana dispensary

17   or grow facility, even if permitted by any State law; ninth,

18   you shall not frequent any places where controlled substances

19   are illegally sold or used, distributed or administered; ten,

20   you shall not associate with any persons engaged in criminal

21   activity or derive any income therefrom unless specifically

22   authorized by the probation officer.  You shall not associate

23   with any person convicted of a felony, except to participate in

24   any approved treatment programs during sessions of such

25   programs, but neither before or after them; eleven, you shall

1    permit a probation officer to visit you at any time or place

2    and shall permit confiscation by the probation officer of any

3    contraband observed in plain view; twelfth, you shall notify

4    the probation officer within 24 hours of being arrested or

5    questioned by a law-enforcement officer for whatever reason;

6    thirteen, you shall not enter into any agreement to act as an

7    informer or special agent or source for or on behalf any

8    law-enforcement agency, without the prior written permission of

9    the Court; fourteen, you shall comply with all reporting laws

10   including the Adam Walsh Act and shall notify third parties,

11   including employers of your criminal convictions and the

12   status -- your present status then on supervised release.

13          You shall permit the probation officer to make similar

14   notifications to anyone; such as, an employer or a landlord

15   who, in the judgment of the probation officer, needs to know or

16   to confirm your compliance with this notification requirement.

17          Now, there are special conditions of supervision, and

18   these are as follows, you shall participate in and successfully

19   complete a program of testing and/or treatment for substance

20   abuse as approved by the probation officer until such time as

21   you are released from the program by the probation officer.

22   The Defendant shall -- you shall abstain from the use of

23   alcohol or other intoxicants or depressants during the course

24   of treatment, and shall pay such of the costs of treatment as

25   you are able, as directed by the probation officer.

 1          And I will interject here to tell you that in these

 2     special conditions, these apply to your supervised release.  I

 3     can't order the Bureau of Prisons to provide you with these

 4     programs.  I can only recommend them.  And I have strongly

 5     recommended the same and similar kinds of programs while you

 6     are in prison as I can order and require that you do while you

 7     are on supervised release.

 8          Two, you shall participate in and successfully

 9     complete a program of mental-health treatment as approved and

10     directed by the probation officer until such time as you are

11     released from the program by the probation officer; and three,

12     you shall participate in and successfully complete a program of

13     sex-offender evaluation and treatment as provided by the

14     probation officer.  Any such program, however, shall not

15     include polygraph, plethysmograph and/or visual-reaction time

16     measuring instruments.  For a detailed explanation of this

17     exclusion, I have reserved the right to issue a written opinion

18     and those details and conditions will be spelled out in a

19     memorandum opinion order which I am incorporating into today's

20     hearing by this reference, and there will be an addendum on

21     which I'm presently working regarding the reasons why I will

22     not order a plethysmograph to be administered.

23          Four, your use of computers and Internet device --

24     access devices shall be limited to those that the probation

25     officer specifically authorizes in advance of any such use or

1   programming.  You shall submit your person, property, affects,

2   including any car, computer, books, papers and other electronic

3   communication devices or copies to search by the probation

4   officer at any time in order to monitor compliance with this

5   order.

6        Five, the probation officer is authorized to install,

7   and you shall permit, any such installation of any software or

8   hardware designed or intended to monitor computer activities on

9   any computer you are permitted by the probation officer to use.

10  A notice shall be placed on the computer at the time of

11  installation to advise and warn others of the existence of such

12  monitoring software on the computer.

13       You shall not attempt or cause to be made any removal,

14  tampering or reverse engineering or any other means or method

15  of circumventing the software/hardware described above.

16       Those are, I think, fairly specific.  The written

17  opinion will give you more.  And I am going to finish it, I

18  will provide a copy to the Prosecutor.  She may distribute it

19  as she wishes.  I will provide a copy to Mr. Varholak, and

20  request that he give you a copy, when I send it to him, and

21  that you read it, that you pay attention to it.

22       I can't begin to tell you the feeling I have that you

23  have the chance to spend the rest of your life in a much better

24  way than you have in the past, and I hope that you exercise

25  your best efforts to do that.

1          Is there anything else, Ms. Spencer?

2          *MS. SPENCER:*  Few housekeeping matters, Your Honor.

3    We are not seeking restitution.  It's not an issue in this

4    case.

5          *THE COURT:*  There's no restitution.

6          *MS. SPENCER:*  I will be filing a Motion To Dismiss

7    Count 1 pursuant to the **Plea Agreement** and for the third point

8    for acceptance, as well.

9          *THE COURT:*  Mr. Varholak, anything else?

10         *MR. VARHOLAK:*  Nothing further, Your Honor,.

11         *THE COURT:*  All right then.  Mr. Cheever, the final

12   thing is this, I have to tell you that if you are not

13   satisfied, in any way, at all, with any rulings that I have

14   made, including this sentence or what is about to come out, you

15   have the right to appeal, and if you don't have the funds for

16   that appeal, an attorney will be appointed to represent you on

17   the appeal.

18         You can give a Notice of Appeal.  It's not necessary

19   today, because I'm withholding the judgment until I finish my

20   written opinion, but once -- once that opinion is done, you can

21   notify the Clerk of the Court, and they will immediately

22   prepare a Notice of Appeal and file it for you.  You can have

23   your attorney file it or you can yourself, as you wish.  But

24   you can appeal this case, and we already know this, you don't

25   have the funds to secure private counsel or pay the costs of

1  appeal, but that you have already -- it's already been

2  determined that you are indigent and therefore those costs will

3  be paid for by the Government, should you decide to appeal.

4        Is there anything else?

5        *MS. SPENCER:*  No.  Thank you, Your Honor.

6        *MR. VARHOLAK:*  No, Your Honor.

7        *THE COURT:*  All right.  I want to thank counsel for

8  your work in this case, and I do wish you well.

9        *MR. VARHOLAK:*  Thank you.

10       *THE COURT:*  We will be in recess.

11       *THE COURTROOM DEPUTY:*  All rise.

12     (Recess at 11:20 a.m.)

13                    **REPORTER'S CERTIFICATE**

14    I certify that the foregoing is a correct transcript from

15  the record of proceedings in the above-entitled matter.  Dated

16  at Denver, Colorado, this 6th day of September, 2016.

17

18                                    *S/Tamara Hoffschildt*
                                     Tamara Hoffschildt
19

20

21

22

23

24

25